**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**CLARENCE MITCHELL**                                    **CIVIL ACTION**

**VERSUS**                                              **NO. 18-919-BAJ-RLB**

**DIAMOND PLASTICS CORP., ET AL.**

**ORDER**

Before the Court is the Motion to Compel Discovery from Defendant Diamond Plastics Corporation (R. Doc. 82) filed by Plaintiff, Clarence Mitchell, on March 10, 2020. An Opposition (R. Doc. 88) was filed by Defendant, Diamond Plastics Corporation, on March 31, 2020.

**I.      Background**

Clarence Mitchell ("Plaintiff") commenced this action with the filing of his original Complaint (R. Doc. 1) on October 18, 2018, followed by his First Supplemental and Amending Complaint (R. Doc. 27) on March 7, 2019, and his Second Supplemental and Amending Complaint (R. Doc. 39) on June 20, 2019, the latter being the operative pleading at the time of this Order. Therein, Plaintiff alleges that, on or about August 23, 2018, he was operating a belling machine when the cutting mechanism came loose and sucked his hand into the machine, causing him to lose his right hand above his wrist. (R. Doc. 39 at 4). Plaintiff alleges that, prior to the incident, he informed a supervisor and employee of Defendant Diamond of a problem with the machine several times throughout that day, but was told to keep working, and that Defendant Diamond had purposefully removed all of the safety guards. (R. Doc. 39 at 4). Plaintiff also alleges that Defendant Diamond re-installed all of the missing safety guards after the incident, but before the inspection to be done by OSHA as a result of the incident. (R. Doc. 39 at 5).

Lastly, Plaintiff alleges that Defendant Diamond knew with certainty that based on these allegations, Plaintiff brings claims against Defendant Diamond for intentional and negligent acts, negligent supervision, and vicarious liability. (R. Doc. 39 at 5-9).

Plaintiff propounded his second set of Discovery Requests to Defendant Diamond on December 4, 2019, and received responses from Defendant Diamond on March 6, 2020, after the parties agreed to extend the time to respond. (R. Doc. 82 at 1). Plaintiff represents that the parties conducted conferences pursuant to Fed. R. Civ. P. 37 on March 6 and 9, 2020, and this instant Motion arises from those issues that remain unresolved. (R. Doc. 82 at 1).

## II.    Law and Analysis

### A.    Legal Standard

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).  The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Rule 33 of the Federal Rules of Civil Procedure provides for the service of written interrogatories. A party seeking discovery under Rule 33 may serve interrogatories on any other party and the interrogatory "may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2).

Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of documents and tangible items. A party seeking discovery must serve a request for production on the party believed to be in possession, custody, or control of the documents or other evidence. Fed. R. Civ. P. 34(a). The request is to be in writing and must set forth, among other things, the desired items with "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A).

A party must respond or object to interrogatories and requests for production. *See* Fed. R. Civ. P. 33(b)(2); Fed. R. Civ. P. 34(b)(2)(A). This default date may be modified by stipulation between the parties. Fed. R. Civ. P. 29(b). If a party fails to respond fully to discovery requests in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel responses and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

**B.    Analysis**

Plaintiff seeks to compel response from Defendant Diamond to his Interrogatory Nos. 2-5, 10-12, 15, 19, and 22, Request for Production Nos. 2, 3, 6, 7, 13, and 14, and Request for Admission No. 3. The Court will address each in turn, after first addressing general objections applicable to multiple discovery requests.

### 1.    Meaning of "Guard"

Plaintiff suggests that Defendant Diamond has responded to his discovery requests based on an incorrect interpretation of the meaning of the term "guard," as used by Plaintiff in Interrogatory Nos. 11, 15, 19, and 22, and Request for Admission No. 3. The parties appear to agree that a part or parts were not present at the time of the incident but disagree as to the nomenclature with which to refer to said part(s).  For example, in Defendant Diamond's response to Request for Admission No. 3, it states that "a flap which partially covers the opening to the beller chamber in normal operations was not present at the time of the accident, but further shows this component is not a guard within the meaning of the PEM owner's manual," and refers to guards in quotations marks in its response to Interrogatory No. 19. Defendant Diamond also suggests in its response to Interrogatory No. 15 that "[t]he gasket connected to the top and bottom guard retainer bars deteriorated over time through normal operation of the subject beller machine, and was not replaced before the subject accident." (R. Doc. 82-3 at 7).

It is unclear to the Court whether the "flap" referred to in Defendant Diamond's response to Request for Admission No. 3 is the same part as the "gasket" referred to in response to Interrogatory No. 15. Regardless, it is clear the parties dispute the scope of the term "guard" as used in Plaintiff's discovery requests. In his discovery requests, Plaintiff defines the term "guard" as "'machine guard,' a safety feature on or around equipment to protect humans from injury while working nearby or while operating equipment, as referenced in OSHA's CFR 1910.212." (R. Doc. 82-2 at 3). In briefing, Plaintiff attaches the relevant OSHA provision, and refers to the part as a shield of rubber (R. Doc. 82-2 at 2), barrier guard "which prevents operators from sticking their hands into the machine." In response to the Interrogatory and Request for Admission, Defendant Diamond admits that a part was not present, referring to it as

a flap, but argues that it is a gasket as defined by the PEM owner's manual, as opposed to a guard. (R. Doc. 82-2 at 4). Based on the Court's review of the pleadings, the relevant part or parts have been referred to as a guard, gasket, machine guard, gasket guard, rubber shield, flap, rubber flap, and barrier guard.

"The very purpose of discovery is to get all such facts and explanations on the table and out in the open, so that the case may be fully and accurately evaluated and adjudicated." *Meyer v. Turn Servs., L.L.C.*, 2016 WL 6610931, at *3 (E.D. La. Nov. 9, 2016). Notwithstanding Defendant Diamond's more narrow interpretation of the term "guard," the Court will not allow that disagreement to prevent the discovery of potentially negative information. Thus, the Court concludes that the term "guard" for the purpose of Plaintiff's discovery requests includes (1) the flap referred to by Defendant Diamond in its response to Request for Admission No. 3; (2) the gasket referred to in Defendant Diamond's response to Interrogatory No. 15; (3) as well as any other guard, gasket, machine guard, gasket guard, rubber shield, flap, rubber flap, and barrier guard within the scope defined by Plaintiff in his discovery requests, including OSHA's CFR 1020.212.

Accordingly, to the extent Defendant Diamond's responses to Interrogatory Nos. 11, 15, 19, and 22, and Request for Admission No. 3 were limited to its interpretation of the meaning of the term "guard," Defendant Diamond shall supplement its response based on the foregoing within thirty (30) days of the date of this Order.

## 2.    Relevant Time Period

Defendant Diamond lodges the objection of overbreadth in response to Plaintiff's Interrogatory Nos. 2-5, and 10-12, Request for Production Nos. 2, 3, 6, 7, 13, and 14, and Request for Admission No. 3, and specifically argues that response to Plaintiff's Request for

Production No. 2 would apply to "any time during Diamond's existence." (R. Doc. 88 at 6). Of the discovery requests to which Plaintiff seeks supplemental response, only Interrogatory Nos. 15, 19, and 22 are limited in their temporal scope.

"When a discovery request is overly broad and not limited in scope, the court may 'properly limit the contested discovery to the relevant period of time' and location." *Calvasina v. Wal-Mart Real Estate Bus. Tr.*, 2012 WL 12863931, at *7 (W.D. Tex. June 25, 2012) (citing *Solorzano v. Shell Chem. Co.*, 254 F.3d 1082, 2001 WL 564154, at *8 n. 13 (5th Cir. May 18, 2001)). While the relevant timeframe for discovery may range, based on Defendant Diamond's objections, and the Court's review of the discovery requests, the Court will impose a temporal limitation of five (5) years prior to the date of the incident applicable to all of the discovery requests at issue herein, unless otherwise specified. This finding is applicable to Interrogatory Nos. 2-5, and 10-12, Request for Production Nos. 2, 3, 6, 7, 13, and 14, and Request for Admission No. 3, subject to any additional periods of time outlined below.

### 3.    Relevant Incidents and Pipe Belling Machines

Defendant Diamond objects on the grounds of overbreadth, taking the position that injuries involving anything other than amputation of a hand involving only the subject belling machine are within the scope of discovery. (R. Doc. 88 at 5, 6-7, 8, 9). This objection pertains to Interrogatory Nos. 2, 4, 10, and 11 and Request for Production Nos. 3, 7, 13, and 14.

Defendant Diamond argues that no other injuries or pipe belling machines are relevant because Plaintiff's claims are limited as a matter of law to those for intentional tort, wherein Plaintiff must prove actual intent or the substantial certainty that injury would occur under those circumstances. (R. Doc. 88 at 4). Plaintiff has brought claims for negligence and intentional tort, negligent supervision, and vicarious liability against Defendant Diamond, and the Court will not

determine on a discovery motion whether any of Plaintiff's claims are viable as a matter of law. Furthermore, even were Plaintiff's claims limited to those for intentional tort, evidence of other injuries from other pipe belling machines of the same make and model would be relevant. A reasonable trier of fact could conclude an employer was substantially certain that injury could occur if it had knowledge of dangerous conditions on the same make and model machine, based on other injuries sustained by other persons, or missing or defective parts that would cause injury, or a combination thereof.

Therefore, the Court will not limit Plaintiff's discovery requests to solely Plaintiff's injury or only the exact subject pipe belling machine. To the extent Plaintiff's discovery requests seek information beyond his specific incident with the subject pipe belling machine, that information is within the scope of discovery when limited to physical injuries (as opposed to property damage) involving pipe belling machines of the same make and model as the subject machine.

### 4.    Interrogatory No. 2

Interrogatory No. 2 asks for the following information:

> Have You, or any business owned, operated or controlled by You, ever filed or been a party to any other lawsuit brought by or against any other entity or person for negligence, strict liability, breach of warranty, or any other tort or for workers compensation associated with injuries caused by the Subject Machine or any pipe belling machine? If so, state the court in which filed, the year filed and the title and docket number of the case, and all parties to such suit.

(R. Doc. 82-3). Defendant Diamond objects to the interrogatory as "vague, ambiguous, overbroad, and unduly burdensome," but goes on to state "respondent has never been a party to a lawsuit alleging that a beller operator's hand was amputated by a beller machine." (R. Doc. 83-3 at 2).

7

The Court finds Interrogatory No. 2 to be overly broad and will strike it accordingly. The interrogatory is not sufficiently tailored to obtain relevant discovery within the scope allowed by law. Plaintiff alleges that his hand was amputated while operating a belling machine, as a result of a defect in the machine and an allegation that a supervisor instructed him to continue working despite the defect. Even were the Court to impose the limitations in sections 1, 2, and 3 above, Interrogatory No. 2 remains overbroad in that it seeks information regarding Defendant Diamond and any business owned, operated or controlled by it, as well as claims Plaintiff has not raised in this litigation, including strict liability and breach of warranty. Furthermore, as discussed in more detail below, Plaintiff has propounded other discovery requests regarding other claims or complaints involving pipe belling machines such that Plaintiff has the opportunity to discover such information through other, more appropriately limited claims.

### 5.    Interrogatory No. 3

With Interrogatory No. 3, Plaintiff seeks the following information:

> Please list any and all other operators of the subject machine for the past five (5) years other than Plaintiff.

(R. Doc. 82-3 at 2). In response, Defendant Diamond objected on its assertion that the interrogatory is unduly burdensome, and then states that "all of its operators move around to various beller machines during the course of employment and are not permanently assigned to any particular line." (R. Doc. 82-3 at 2). Plaintiff argues that Defendant Diamond failed to answer the question asked. (R. Doc. 82-2 at 2).

"A party resisting discovery must show specifically how each interrogatory or document request is overly broad, unduly burdensome, or oppressive… This requires the party resisting discovery to show how the requested discovery was overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden."

*Heller v. City of Dallas*, 303 F.R.D. 466, 490 (N.D. Tex. Nov. 12, 2014) (internal citations omitted). Defendant Diamond has failed to offer any argument or evidence as to the nature of the burden, other than to suggest in briefing that its operators "are not permanently assigned to any particular line," which falls short of meeting Defendant Diamond's burden on an objection of undue burden.

Defendant Diamond makes no representation as to the number of belling machines and that location, the potential number of persons who operated belling machines, or the way in which any records necessary to answer the interrogatory were kept. Accordingly, Defendant Diamond's objection is overruled. Defendant Diamond shall respond to Interrogatory No. 3 in full within thirty (30) days of the date of this Order by identifying all belling machine operators at the location of the subject machine, consistent with the limitations set forth in Section 2, i.e., within five (5) years prior to the incident for which Plaintiff sues.

### 6.    Interrogatory No. 4

Plaintiff seeks the following information through Interrogatory No. 4:

Prior to the incident, did You or any of Your agents or employees have any knowledge of any accidents or injuries caused by the subject machine or any other pipe belling machines? If so please state:

> a.  how you or any of your agents or employees acquired any such knowledge,
> b.  each and every date of any such accident or injury.

(R. Doc. 82-3 at 2-3). Defendant Diamond objected on its assertion that Interrogatory No. 4 is vague, ambiguous, overbroad, and unduly burdensome, and goes on to respond that it "is not aware of any other accidents or injuries involving the amputation of a beller operator's hand." (R. Doc. 82-3 at 3).

Plaintiff argues that Defendant's response limited the interrogatory where it was not so limited and asserts that another employee at a Diamond facility "had previously been killed due to the same circumstances and conditions as this instant case." (R. Doc. 39 at 6). The Court agrees, and will order Defendant Diamond to respond in full, subject to limitations set forth in Sections 1-3 above. Other injuries sustained by other persons operating the subject belling machine or other belling machines of the same make and model are within the scope of permissible discovery.

### 7. Interrogatory No. 5

Plaintiff's Interrogatory No. 5 seeks the following information:

State whether you or any of your officers, employees or any officers or employees of any of your subsidiary or parent corporations, during the 10 years prior to this law suit up to the present time, and continuing until the close of this action, authored or received from any source any communication or document (whether external or internal) that suggested that the subject machine or any pipe belling machine subjected users to danger or injury by its use or related to the prevention or reduction of accidents or injuries by users arising out of the use of the subject machine or any pipe belling machines?

If so, for each communication, state:

a. When and from whom it was received, and if written, the date of the documents;
b. What form it was in (whether written or oral);
c. What person with your company received it or authored it;
d. What the specific substance of the complaint, suggestions, or communication was;
e. The substance of any response thereto;
f. The date and author of such response;
g. What remedial action, if any, was taken and when and by whom it was taken.

(R. Doc. 82-3 at 3). Defendant Diamond objected on its assertion that Interrogatory No. 5 was vague, ambiguous, overbroad, and unduly burdensome, and refers Plaintiff to the PEM beller operator's manual it previously produced. (R. Doc. 82-3 at 4). Plaintiff argues that the answer

provided by Defendant Diamond was insufficient, and that he was "clearly asking for any external or internal safety bulletins or industry publications that keep those in the plastics industry informed of the dangers discovered in pipe belling production and any steps that should and were taken to prevent same." (R. Doc. 82-2 at 8). Defendant Diamond does not address Plaintiff's argument and does not explain its position of undue burden.

The Court finds Interrogatory No. 5 appropriate, subject to a temporal limitation of the previous five (5) years, as opposed to the ten years set forth in the interrogatory, and limited to the subject Defendant Diamond, thereby striking the necessity of response to any parent or subsidiary entities. Plaintiff has not shown how information pertaining to any parent or subsidiary entities would be within the scope of discovery. To the extent Defendant Diamond has any additional responsive information subject to the five-year timeframe, it shall provide same to Plaintiff within thirty (30) days of the date of this Order. To the extent Defendant Diamond has already fully responded to this interrogatory, i.e., its reference to the PEM beller operator's manual being the only responsive material, Defendant Diamond shall so certify.

### 8. Interrogatory No. 10

Plaintiff's Interrogatory No. 10 seeks the following:

> Have you ever received any complaints, concerns or suggestions from users, operators, owners, or manufacturers regarding the safety of the subject machine or any pipe belling machines? If so, please provide the identity of the person making the complaint, concern, or suggestion, and the date of the same.

(R. Doc. 82-3 at 6). Defendant Diamond raised boilerplate objections that the interrogatory is vague, ambiguous, overbroad, and unduly burdensome, and provides no supporting briefing in opposition. (R. Doc. 82-3 at 6). As noted in the foregoing Sections 2 and 3, whether Defendant Diamond was put on notice of any potential risk of personal injury from pipe belling machines of the same make and model as the subject machine within five (5) years prior to the date of the

incident is within the scope of discovery for this litigation. Thus, the Court will order Defendant

Diamond to provide full response to Interrogatory No. 10 within thirty (30) days of the date of

this Order.

### 9.      Interrogatory No. 11

With Interrogatory No. 11, Plaintiff seeks the following information:

> Have you ever received any complaints, concerns or suggestions from users, operators or owners or manufacturers regarding the use, non-use, functionality, or non-functionality of the guards on the subject machine or any pipe belling machines? If so, please provide the identity of the person making the complaint, concern, or suggestion, and the date of same.

(R. Doc. 82-3 at 6). Defendant Diamond responded with boilerplate objections and stated that it

"has not received complaints regarding the use or functionality of the guards on the subject beller

machine." (R. Doc. 82-3 at 6). Plaintiff posits that Defendant Diamond's response is limited to

its definition of "guard" as opposed to including the gasket or rubber flap as per Plaintiff's

definition. (R Doc. 82-2 at 9). Defendant Diamond provides no argument in response, and thus

the Court cannot ascertain whether its response was limited to its definition of "guard," or

whether its response is inclusive of Plaintiff's definition.

The Court will order Defendant Diamond to respond in full, if it has not already done so,

subject to the discussion of the meaning of the term "guard" in Section 1 above, as well as the

limitations set forth in Sections 2 and 3. Supplemental response, or certification of completeness

of initial response, shall be provided to Plaintiff within thirty (30) days of the date of this Order.

### 10.      Interrogatory No. 12

Plaintiff's Interrogatory No. 12 asks the following:

> What is the proper Lockout Tagout Procedure utilized in operation of the subject machine?

(R. Doc. 82-3 at 6). Defendant Diamond responded that "Only foremen and supervisors are authorized to lock out/tag out equipment. Operators and other employees who believe equipment must be stopped are required to inform a foreman or supervisor." (R. Doc. 82-3 at 7). Plaintiff suggests that Defendant Diamond's answer was not responsive because he "asked for the procedures used in lock out tag out, not who was authorized." (R. Doc. 82-2 at 9).

Defendant Diamond provides no argument in opposition as to Plaintiff's Interrogatory No. 12, with regard to relevance, burden, or otherwise. The Court agrees with Plaintiff that Defendant Diamond's response did not address the question as asked. Regardless of who is authorized to lock out tag out equipment, Plaintiff inquires as to the procedure for so doing. Defendant Diamond suggests that an operator or other employee who believes equipment must be stopped is required to inform a foreman or supervisor but does not provide information as to what the procedure is once an operator or other employee who believes equipment must be stopped informs a foreman or supervisor. Defendant Diamond shall provide full and complete response to Interrogatory No. 12 within thirty (30) days of the date of this Order.

### 11.   Interrogatory No. 15

Interrogatory No. 15 asks, "What modifications, if any, have been done on the subject machine since it was purchased?" (R. Doc. 82-3 at 7). Defendant Diamond responded as follows:

> The gasket connected to the top and bottom guard retainer bars deteriorated over time through normal operation of the subject beller machine, and was not replaced before the subject accident. Said gasket was replaced following the subject accident.

(R. Doc. 82-3 at 7). Plaintiff suggests that Defendant Diamond's response is based on an improperly limited definition of "guard." (R. Doc. 82-2 at 5).

To the extent Defendant Diamond's response is limited to the meaning of the term "guard" set forth in the PEM owner's manual, Defendant Diamond shall amend its response

within thirty (30) days of the date of this Order based on the guidance set forth in Section 1

above.

### 12.    Interrogatory No. 19 (and Request for Admission No. 3)

Interrogatory No. 19 asks, "What guards, if any, have been removed, replaced or

modified on the subject machine?" (R. Doc. 82-3 at 8). Defendant Diamond responded with the

following:

> All "guards" furnished by the manufacture at the time the subject beller was
> delivered to respondent were not removed or modified. See also Answer To
> Request For Admission No. 3.

Also relevant to this analysis, Defendant Diamond's response to Request for Admission

No. 3 stated the following:

> Deny. In an effort to cooperate with discovery, respondant[sic] shows that a flap
> which partially covers the opening to the beller chamber in normal operations was
> not present at the time of the accident, but further shows this component is not a
> guard within the meaning of the PEM owner's manual but instead is described as a
> "gasket" in the manual. All guards were present at all times, including at the time
> of the subject accident.

(R. Doc. 82-2 at 10). Plaintiff suggests that Defendant Diamond responded based on its own,

improperly limited meaning of the term "guard." As discussed above, it is clear the parties have

proceeded based on differing interpretations of the term, and the Court will not allow these

differences to impede the fair progress of discovery, nor does the Court make any substantive

finding as to the correct term for the part or parts.

Based on the Court's discussion in Section 1 above, Defendant Diamond shall provide

supplemental responses to Interrogatory No. 15 and Request for Admission No. 3 within thirty

(30) days of the date of this Order. Defendant Diamond's response shall also include the

abatements observed and reported by OSHA as those abatements appear to pertain to parts that

were previously removed.

13.    **Interrogatory No. 22**

Plaintiff seeks the following information with Interrogatory No. 22:

Identify by whom, when, where, why and how the guards were removed and replaced from the subject machine.

(R. Doc. 82-3 at 9). Defendant Diamond references its response to Interrogatory No. 19, which in turn states that "All 'guards' furnished by the manufacturer at the time the subject beller was delivered to respondent were not removed or modified," and further references its response to Request for Admission No. 3. (R. Doc. 82-3 at 8, 9). In its response to Request for Admission No. 3, Defendant Diamond suggests that a "flap which partially covers the opening to the beller chamber in normal operations was not present at the time of the accident, but further shows this component is not a guard within the meaning of the PEM owner's manual but instead is described as a 'gasket' in the manual." (R. Doc. 82-2 at 10). Defendant Diamond also suggests in response to Interrogatory No. 15 that a particular gasket deteriorated over time and was replaced following the subject accident. (R. Doc. 82-3 at 7).

To the extent Defendant Diamond's response to Interrogatory No. 22 that guards were not removed or modified is based on its limited interpretation of the meaning of the term "guard," Defendant Diamond shall supplement its response within thirty (30) days of the date of this Order consistent with the Court's ruling regarding Interrogatory No. 19, above. The additional information sought in Interrogatory No. 22 shall be provided for each instance identified in Interrogatory 19.

14.    **Request for Production No. 2**

In Request for Production No. 2, Plaintiff seeks the following documents:

Produce all documents evidencing any communication of any kind, between You and HWEM, Inc. or PEM, LLC relating in any way to Plaintiff and/or the subject machine or other belling machines.

15

(R. Doc. 82-3 at 10). Defendant Diamond responded with objections that the request was vague, ambiguous, overbroad, and unduly burdensome. (R. Doc. 82-3 at 10). In briefing, Plaintiff suggests that he needs to know what communications were had between PEM, LLC and HWEM, Inc. (formerly PEM, Inc.) prior to the sale to PEM, LLC, the manufacturer of the subject machine, in part because PEM, LLC "has argued it does not have successor liability, and HWEM, LLC has stated it had no insurance of any kind after its sale to PEM, LLC." (R. Doc. 82-2 at 11). In Opposition, Defendant Diamond argues the request is overbroad because it operates seven different plants and Plaintiff's request "would encompass every order to the manufacturer from any of Diamond's plants at any time during Diamond's existence, any warranty work requested or performed, any spare parts ordered, any other interaction of any kind, and without regard to the nature of such communications." (R. Doc. 88 at 6).

The Court agrees that Request for Production No. 2 is overbroad and would require production of every single communication between Defendant Diamond and PEM, LLC or HWEM, Inc. throughout their existence, regardless of its relevance to the claims brought by Plaintiff in this litigation. Accordingly, Request for Production No. 2 will be stricken.

### 15.    Request for Production No. 3

Plaintiff requests production of the following information in Request for Production No. 3

Produce all documents evidencing any communication of any kind, between You and any other entity regarding injuries to any persons operating the subject machine or other pipe belling machines.

(R. Doc. 82-3 at 10). Defendant Diamond advanced boilerplate objection that the request was vague, ambiguous, overbroad, and unduly burdensome, and subject to those objections, purports to produce "all known communications pertaining to the plaintiffs[sic] accident." (R. Doc. 82-3 at 10). Plaintiff argues that his request was not limited to his accident. (R. Doc. 82-2 at 12).

16

Defendant Diamond argues in Opposition that production beyond that relating to Plaintiff's accident is beyond the scope of discovery. (R. Doc. 88 at 6-7).

The Court disagrees and will order supplemental production of documents "evidencing any communication of any kind, between You and any other entity regarding injuries to any persons operating the subject machine or other pipe belling machines" within the five-year time period preceding the filing of this lawsuit. Other injuries caused by the subject machine or other pipe belling machines are relevant to the question of what knowledge, if any, Defendant Diamond had of potential safety issues with the subject pipe belling machine, or pipe belling machines in general, as discussed above in Section 3.

### 16.    Request for Production No. 6

Plaintiff's Request for Production No. 6 asks Defendant Diamond for the following:

Produce any and all internal or external correspondence regarding amputation or amputation risk by use of belling machines.

(R. Doc. 82-3 at 11). Defendant Diamond objected to the request as vague, ambiguous, overbroad, and unduly burdensome, and subject to those objections, referenced the previously produced PEM owner's manual. (R. Doc. 82-3 at 11). Plaintiff asserts that he "is aware of other amputations caused by belling machines, including specifically the decapitation of Raymundo Correa at Diamond's plant in Texas by the same PEM manufactured and model belling machine." (R. Doc. 82-2 at 12).

As set forth more fully in Section 3 above, other injuries or risk of injuries from pipe belling machines of the same make and model are within the scope of discovery, and the Court will order Defendant Diamond to provide supplemental response within thirty (30) days of the date of this Order, subject to the foregoing sections 2 and 3.

### 17.    Request for Production No. 7

Request for Production No. 7 seeks the following:

Produce all notices, reports or other documentation issued to You regarding personal injuries caused by the subject machine or other belling machines including but not limited to belling machine model 616BGLP.

(R. Doc. 82-3 at 11). Defendant Diamond asserted objections of the request being vague, ambiguous, overbroad and unduly burdensome, and subject to those objections answered "none." (R. Doc. 82-3 at 12). Plaintiff suggests that he is "aware of other amputations caused by belling machines, including specifically the decapitation of Raymundo Correa at Diamond's plant in Texas by the same PEM manufactured and model belling machine." (R. Doc. 82-2 at 13). In Opposition, Defendant Diamond suggests that the request is overly broad because it is not limited in time or scope, and that the meaning of "notices, reports or other documentation" is unclear, but responds based on its interpretation that those terms refer to "findings of OSHA violations or similar sanctions." (R. Doc. 88 at 8).

Plaintiff does not indicate whether he defined "notices, reports or other documentation" in his requests to Defendant Diamond, nor does he attach those requests as propounded. At the same time, there is also no support for the narrow interpretation advanced by Defendant Diamond, being limited to only "findings of OSHA violations or similar sanctions."

As noted in the case of *Heller v. City of Dallas*, 303 F.R.D. 466, 491 (N.D. Tex. 2014), and instructive herein, "[t]he responding party 'should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories. If necessary to clarify its answers, the responding party may include any reasonable definition of the term or phrase at issue'… Further, '[i]f a party believes that the request is vague, that party [should] attempt to obtain clarification prior to objecting on this ground.'" (Internal citations omitted).

While Defendant Diamond suggests that the meaning of "notices, reports or other documentation" is unclear, there is no evidence before the Court that Defendant Diamond attempted to ascertain what Plaintiff meant by the term, and indicated its own definition in its response.

At the same time, while the Court understands that Plaintiff does not agree with the definition employed by Defendant Diamond, he provides no indication of what he intended by the terms, and the Court will not endeavor to do so on its own accord. The Court does find, however, that the definition employed by Defendant Diamond is overly narrow. Therefore, the Court will order Defendant Diamond to provide supplemental response within thirty (30) days of the date of this Order based on a broader interpretation of "notices, reports or other documentations," and the Court further notes that Defendant Diamond is free to seek clarification or understanding from Plaintiff's counsel, if needed.

### 18.    Request for Production No. 13

In Request for Production No. 13, Plaintiff seeks the following:

> Produce all internal memoranda, correspondence, studies, tests, reports or other documentation of any nature, including computer entries, regarding injuries or property damage relating to the subject machine or other pipe belling machines.

(R. Doc. 82-3 at 13). Subject to boilerplate objections of being vague, ambiguous, overbroad, and unduly burdensome, Defendant Diamond references a previously produced PEM owner's manual. (R. Doc. 82-3 at 14). Plaintiff suggests that the "owner's manual is not a responsive document," and that he is aware of other injuries caused by belling machines, including specifically the decapitation of Raymundo Correa by the same model pipe belling machine. (R. Doc. 82-2 at 13). Defendant Diamond responds that this request is not limited to "accidents involving the facts as alleged by the plaintiff, i.e., where a worker complaining of malfunctions

of a beller was compelled to continue working until a body part was 'sucked' into the beller." (R. Doc. 88 at 9).

Request for Production No. 13 is overbroad as written. Notwithstanding that finding, Defendant Diamond's suggestion that the request should be limited to instances "where a worker complaining of malfunctions of a beller was compelled to continue working until a body part was 'sucked' into the beller" is overly narrow for purposes of the scope of discovery. The issues raised with regard to Request for Production No. 13 have been addressed in the preceding Sections 2 and 3, and therefore, the Court will order Defendant Diamond to provide supplemental response within thirty (30) days of the date of this Order subject to Sections 2 and 3. More specifically, Defendant Diamond shall produce, subject to any applicable privilege, "all internal memoranda, correspondence, studies, tests, reports or other documentation of any nature, including computer entries, regarding personal injuries relating to the subject machine or other pipe belling machines of the same make and model within the five (5) years preceding Plaintiff's accident through the filing of this litigation."

### 19.    Request for Production No. 14

Plaintiff seeks the following information with Request for Production No. 14:

Produce all complaints and or petitions, filed against or delivered to you alleging property damage or personal injuries sustained from using the subject machine or other pipe belling machines.

(R. Doc. 82-3 at 14). Defendant Diamond submitted boilerplate objections, then responded that "the only lawsuits filed against respondent alleging injury to persons when reaching into a belling machine are this matter and the Raymundo Correa suit, which upon information and belief are already in the possession of plaintiff's counsel." (R. Doc. 82-3 at 14). Plaintiff argues that his request was "not limited to complaints made for injuries the[sic] occurred 'when

reaching into a belling machine.'" (R. Doc. 82-2 at 14). In response, Defendant Diamond argues that Plaintiff is improperly "seeking discovery of other accidents in the course of using a belling machine," and notes that it is "aware of minor injuries suffered by some operators when fingers were pinched between a pipe and pipe rack and other similar occurrences while operating bellers, and other injuries under circumstances completely dissimilar to what the plaintiff alleges here." (R. Doc. 88 at 9).

The Court will order Defendant Diamond to respond to Plaintiff's Request for Production No. 14 in full, or certify that it has already done so, within thirty (30) days of the date of this Order, subject to the foregoing Sections 2 and 3. Other injuries sustained while operating a pipe belling machine are within the scope of discovery, and thus, to the extent there were any other complaints or petitions filed or delivered to Defendant Diamond, those complaints or petitions shall be provided. Whether Defendant Diamond was subject to other litigation or potential litigation arising out of injuries sustained while operating a pipe belling machine of the same make and model within five (5) years preceding Plaintiff's accident, including but not limited to the Raymundo Correa matter noted by both parties, is relevant to the question of Defendant Diamond's awareness of any safety issues with the subject pipe belling machine make and model.

## III.    Conclusion

Based on the foregoing,

**IT IS ORDERED** that the Motion to Compel Discovery from Defendant Diamond Plastics Corporation (R. Doc. 82) filed by Plaintiff on March 10, 2020 is **GRANTED in part** and **DENIED in part** as set forth more fully herein.

**IT IS FURTHER ORDERED** that Defendant, Diamond Plastics Corporation, shall provide supplemental responses as set forth herein within **thirty (30) days** of the date of this Order.

Signed in Baton Rouge, Louisiana, on June 11, 2020.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**