UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CLARENCE MITCHELL                              CIVIL ACTION

VERSUS

DIAMOND PLASTICS                               NO. 18-00919-BAJ-RLB
CORPORATION, ET AL.

### RULING AND ORDER

Before the Court is Defendant Diamond Plastics Corporation's ("Diamond") resubmitted **Motion For Summary Judgment (Doc. 156)**, which seeks dismissal of Plaintiff's remaining claims of negligence and intentional tort. Plaintiff concedes that his negligence claims must be dismissed, but argues that his intentional tort claim survives. (Doc. 160). For reasons to follow, Diamond Plastics' Motion will be granted in part, and Plaintiff's negligence claims will be dismissed. Plaintiff's intentional tort claim will be submitted to the jury.

### I. BACKGROUND

As set forth in this Court's prior orders, this action arises from an on-the-job accident that resulted in the amputation of Plaintiff's right hand. The following facts are drawn from Diamond's Amended Statement of Undisputed Material Facts (Doc. 156-1, *hereinafter* "Diamond's SMF"), Plaintiff's Opposing Statement of Material Facts (Doc. 160-1 at pp. 1-6, *hereinafter* "Plaintiff's Opposing SMF"), Plaintiff's Statement of Additional Facts (Doc. 160-1 at pp. 6-23, *hereinafter* "Plaintiff's Additional SMF"), and Diamond's Reply To Plaintiff's Statement Of Additional Facts (Doc. 130-1, *hereinafter* "Diamond's Reply SMF"), and the record evidence appended

to these documents.

Much of what occurred is undisputed. Diamond operates PVC pipe extrusion plants in various locations throughout the country, including a facility in Plaquemine, Louisiana. (Diamond's SMF at ¶ 1; Plaintiff's Opposing SMF at ¶ 1). On July 3, 2018, Plaintiff started working at Diamond's Plaquemine facility. (Plaintiff's Additional SMF at ¶ 44; Diamond's Reply SMF at ¶ 44). Plaintiff obtained his position at Diamond through a temporary staffing agency, and had no prior experience in the pipe extrusion industry. (Diamond's SMF at ¶¶ 2-3; Plaintiff's Opposing SMF at ¶¶ 2-3; Plaintiff's Additional SMF at ¶ 42; Diamond's Reply SMF at ¶ 42).

One week after starting at Diamond, Plaintiff was assigned to operate a PEM 616B GLP belling machine, a piece of heavy machinery used to cut and insert gaskets into PVC pipe. (Plaintiff's Additional SMF at ¶ 44; Diamond's Reply SMF at ¶ 44). Plaintiff had no prior experience operating a belling machine, and, as was Diamond's custom, received little training regarding its operation. Rather, Plaintiff's introduction to the belling machine consisted of watching his supervisor perform a task once, after which the supervisor would instruct Plaintiff, "You do it." (Plaintiff's Additional SMF at ¶¶ 42-43; Diamond's Reply SMF at ¶¶ 42-43).[1] Plaintiff's

---

[1] Diamond responds with a "qualified" admission of these facts, yet, fails to specifically cite record evidence to support its version of events. (*See* Diamond's Reply SMF at ¶¶ 42-43). Diamond's bald qualification is a plain violation of this Court's Local Rules governing summary judgment practice, which require that *all* statements of material fact be supported with "a citation to the specific page or paragraph of identified record material supporting the assertion." M.D. La. LR 56(f).

Troublingly, this is the *second* time Diamond has ignored this requirement. Indeed, on March 31, 2021, the Court denied Diamond's original motion for summary judgment based solely on Diamond's failure to properly cite record evidence supporting its original Statement Of Undisputed Material Facts. (Doc. 151). Having already specifically admonished Diamond

2

supervisor warned Plaintiff that the belling machine was missing manufacturer-installed safety guards and was "dangerous." (Plaintiff's Additional SMF at ¶ 43; Diamond's Reply SMF at ¶ 43).[2] Plaintiff's supervisor even went so far as to say, "That machine is going to grab your arm if you don't be careful, keep working though, we need to put a guard on that thing." (Plaintiff's Additional SMF at ¶ 30; Diamond's Reply SMF at ¶ 30).[3] Diamond did not instruct Plaintiff regarding what to do if a gasket got stuck in the belling machine, however, and, apart from these generalized warnings, did not tell Plaintiff that he should not put his hand into the machine to retrieve a stuck gasket. (Plaintiff's Additional SMF at ¶¶ 33-34; Diamond's Reply SMF at ¶¶ 33-34). Moreover, after providing this basic introduction, Diamond did not supervise Plaintiff's operation of the belling machine. (Plaintiff's Additional SMF at ¶ 43; Diamond's Reply SMF at ¶ 43).[4]

Not surprisingly, Diamond's operating procedures included standard procedures for retrieving gaskets that inadvertently fell inside the belling machine's inner chamber during operation. In Diamond's corporate deposition, Diamond's

---

for "its failure to identify and cite record evidence supporting its assertions" (*Id.* at 3), the Court is at a loss to understand Diamond's persistent failure to properly support its assertions of "fact."

In any event, pursuant to Local Rule 56(f), the Court disregards Diamond's qualification, and deems these facts admitted.

[2] Again, Diamond "qualifies" its admission to these facts, but fails to properly support it's position. (Diamond's Reply SMF at ¶ 43). Accordingly, these facts are also deemed admitted. *See, supra*, n.1.

[3] Diamond flatly denies that Mr. Powers made these statements, yet, again, fails to cite any record evidence supporting its denial. (*See* Diamond's Reply SMF at ¶ 31). As such, the Court disregards Diamond's bald denial, and also deems this fact admitted. *See, supra*, n.1.

[4] This fact is deemed admitted. *See, supra*, n.2.

representative described these procedures as follows: if a gasket "ever got stuck" inside the belling chamber, "you would shut the machine off, lock it out, and retrieve it." (Plaintiff's Additional SMF at ¶ 33; Diamond's Reply SMF at ¶ 33; Doc. 160-3 at p. 11). Diamond's representative admitted, however, that "operators" such as Plaintiff are "not trained to do lock out/tag out when a gasket drops," and are not authorized to perform the "lock out/tag out" procedure. (Plaintiff's Additional SMF at ¶ 33; Diamond's Reply SMF at ¶ 33; Doc. 160-3 at pp. 11-13). Rather, a "supervisor" must perform the "lock out/tag out" procedure. (Doc. 160-3 at p. 13). Plaintiff confirmed this account at his deposition, stating that he did not know how to "lock out/tag out" the belling machine, and had not been trained to do so. (Plaintiff's Additional SMF at ¶ 34; Diamond's Reply SMF at ¶ 34; Doc. 160-2 at p. 20).

On August 29, 2018, eight weeks after starting at Diamond, Plaintiff reported to work and discovered that the belling machine was malfunctioning, causing improper and/or warped connections to the PVC pipe. Plaintiff reported the problem to his supervisor, and his supervisor adjusted the machine. (Plaintiff's Additional SMF at ¶ 31; Diamond's Reply SMF at ¶ 31). At some point thereafter, a gasket fell into the belling machine's inner chamber. When Plaintiff reached into the belling machine to retrieve the loose gasket, the machine's gate clamp suddenly descended onto his wrist. Plaintiff was grievously injured, and ultimately lost his right hand at the wrist. (Diamond's SMF at ¶ 8; Plaintiff's Opposing SMF at ¶ 8).

In order to insert his hand into the belling machine, Plaintiff had to reach through an opening that was originally covered by a manufacturer-installed rubber

4

flap, which Diamond had intentionally removed at some point prior to Plaintiff's accident. (Diamond's SMF at ¶¶ 9-10; Plaintiff's Opposing SMF at ¶¶ 9-10). In fact, Diamond had removed *all* such rubber flaps from *all* belling machines at *all* of its various facilities. (Diamond's SMF at ¶ 11; Plaintiff's Opposing SMF at ¶ 11). OSHA's report of Plaintiff's accident characterizes this missing rubber flap variously as a "gasket guard," a "rubber guard," a "rubber shield," and an "abatement," and described its function as follows: "Abatement. Rubber shield comes up when clamp is up and rides down when clamp goes down preventing access to open area." (Plaintiff's Additional SMF at ¶¶ 22, 25; Diamond's Reply SMF at ¶¶ 22, 25; Doc. 160-11 at 25).

Immediately after Plaintiff's accident, Diamond re-installed new rubber flaps on all of its belling machines to replace the missing manufacturer's flaps. (Plaintiff's Additional SMF at ¶ 21; Diamond's Reply SMF at ¶ 21). When asked to explain this decision, Diamond's corporate representative responded that Diamond "felt we needed to address something." (Plaintiff's Additional SMF at ¶ 20; Diamond's Reply SMF at ¶ 20; Doc. 160-3 at p. 4). OSHA observed Diamond re-installing the flaps during its investigatory "walk around" of Diamond's Plaquemine facility, noting in its Report that "During walk around [Diamond] was installing rubber guards on each line to prevent employees from sticking their hands in the back of the machine." (Doc. 160-11 at 17).

The foregoing facts are essentially undisputed. Indeed, the only issue of consequence genuinely in dispute is whether and to what extent Diamond could have predicted Plaintiff's injury. (*See* Diamond's SMF at ¶ 13; Plaintiff's Opposing SMF at

5

¶ 8). Diamond insists that it "did not intend injury to the plaintiff," and was not "substantially certain that injury would occur" (Diamond's SMF at ¶ 13). In support of these assertions, Diamond represents—as an *undisputed* fact—that "there were no injuries to Diamond beller operators inserting hands [sic] into the belling chamber of operating beller machines before the subject accident."[5] (*Id.* at ¶ 12).

Unfortunately, Diamond's rosy account of its employees' prior history with belling machines is irreconcilable with the evidentiary record. To the contrary, Plaintiff's opposition shows that Diamond's *own* accident reports reveal that in just the *five* years preceding Plaintiff's accident, *twenty* additional Diamond employees suffered accidents while operating belling machines, *including* two prior accidents at Diamond's Plaquemine facility. (*See* Plaintiff's Additional SMF at ¶ 38; Doc. 160-13). Plaintiff's occupational safety expert, Dr. Jahan Rasty, reviewed these twenty prior accidents and produced a report demonstrating that *five* accidents involved facts substantially similar to those at issue here: *i.e.*, Diamond employees reaching into the same entry point of the same make and model of belling machine with rubber guards removed, and suffering serious injuries as a result. (Plaintiff's Opposing SMF

---

[5] To support this "fact" Diamond cites exclusively to an August 18, 2020 affidavit submitted by Mark Majeski, Operations Manager at Diamond's Plaquemine facility. Mr. Majeski states (in relevant part):

> All of our beller operators were operating the beller machines without these flaps for years before this accident. There were no accidents involving hands inserted into machines during normal operations before [Plaintiff's] accident, or any other accidents having to do with the uninstalled flaps. No concerns were ever expressed by any of the operators or their supervisors about the flaps not being installed. We believed there was little chance of injury while operating our bellers without the flaps as there is never any reasons to reach into the beller chamber.

(Doc. 109-4 at pp. 6-7).

6

at ¶ 12; *see also* Plaintiff's Additional SMF at ¶¶ 36-39; Doc. 160-8 at ¶¶ 55-61, *hereinafter* "Rasty Report"). Four of these prior accidents involved employees' hands being caught in unguarded belling machines, and resulted in injuries ranging from bruises and lacerations to finger amputations. The fifth accident involved an employee's torso being caught in an unguarded belling machine, and, tragically, resulted in the employee's death. (Plaintiff's Additional SMF at ¶ 39; Diamond's Reply SMF at ¶ 39).[6] In each instance, Dr. Rasty opines that these prior accidents would not have occurred had the manufacturer's rubber guards been "present (as designed)." (Rasty Report at ¶ 61).

In light of these five prior similar accidents, Dr. Rasty concludes that "Diamond should have made sure all machine guards were in place to remove this known hazard from is operation, and to prevent any other injuries from occurring as a result of the Subject pinch-point":

> Diamond Plastics has had multiple previous injuries similar to the injury sustained by Mr. Mitchell at its facilities. As such, Diamond Plastics should have made sure all machine guards were in place to remove this known hazard from is operation, and to prevent any other injuries from occurring as a result of the Subject pinch-point. Charles Williams, Valentin Gomez, Stephen McGuire, Scotty Bell, and Raymundo Correa are five of the individuals who had similar previous incidents resulting in bodily injuries that should have alerted Diamond Plastics regarding the seriousness of a reoccurring hazard on their machines, in order to take reasonable actions for ensuring that all guards were in place on their equipment to prevent bodily harm to users of its 616B GLP Beller Machines.

(Plaintiff's Additional SMF at ¶ 51; Diamond's Reply SMF at ¶ 51; *see also* Rasty

---

[6] Diamond "denies" Dr. Rasty's descriptions of these prior accident, yet, again, fails to specifically cite record evidence in support of its position. (*See* Diamond's Reply SMF at ¶ 39). Accordingly, the Court deems Dr. Rasty's descriptions admitted. M.D. La. LR 56(f).

Report at ¶¶ 4, 64).[7] Dr. Rasty further opines that Plaintiff's injury would not have occurred had the belling machine's rubber guard not been removed. (Rasty Report at ¶¶ 3, 63).

Despite having ignored all prior belling machine accidents in its initial summary judgment papers, Diamond "acknowledge[s]" them in its reply memorandum—stating "these accidents involved workers operating or working near beller machines like the one involved in the plaintiff's accident." (Doc. 130 at 6). Further, in a complete reversal of its original statement that "there were no injuries to Diamond beller operators inserting hands [sic] into the belling chamber," (Diamond's SMF at ¶ 12), Diamond expressly concedes in its reply memorandum that at least two prior accidents involved employees "inserting a hand into the back of the belling chamber, through the opening where the subject flap would have been located." (Doc. 130 at 6).

Still, Diamond insists that its employees' prior belling machine accidents are all dissimilar from Plaintiff's accident. (*Id.*) Yet, Diamond offers scant proof to support this self-serving statement. Indeed, as indicated above, Diamond's Reply SMF fails to cite any record evidence contradicting Dr. Rasty's assessment of the five "similar" accidents, and instead resorts to bald denials—insisting that "[t]he Rasty report speaks for itself, but the referenced five injuries are not sufficiently similar to the plaintiff's accident to prove Diamond's substantial certainty the plaintiff would

---

[7] Again, Diamond "denies" Dr. Rasty's characterization of these prior accidents, but fails to cite any record evidence in support of its position. (*See* Diamond's Reply SMF at ¶ 51). Accordingly, the Court deems Dr. Rasty's characterization admitted. M.D. La. LR 56(f).

8

be injured." (*See* Diamond's Reply SMF at ¶ 51, *see also id.* at ¶ 39). Tellingly, Diamond's own expert, Safety and Health Consultant Jason E. Henthorn, does not address any prior accidents in his report, much less dispute Dr. Rasty's observations that the five "similar" accidents occurred under substantially the same circumstances as Plaintiff's accident, *and* that none of the accidents—including Plaintiff's accident—would have occurred had Diamond not removed the manufacturer's guards. (*See* Doc. 120).

A jury trial is set to begin March 7, 2022. Now Diamond moves for summary judgment, asserting that Plaintiff's remaining negligence claims are barred by the "exclusive remedy" provision of the Louisiana Workers' Compensation Law, La. R.S § 23:1032(A)(1)(a) ("LWCA"), and that Plaintiff's intentional tort claim fails because Plaintiff cannot show that Diamond knew his injury was "substantially certain" to occur after Diamond removed the rubber safety guards from its belling machines. (Doc. 156).

Plaintiff opposes Diamond's Motion, in part. Plaintiff concedes that his negligence claims must be dismissed, but argues that his intentional tort claim survives because the evidence establishes a genuine dispute regarding Diamond's ability to anticipate his injury, particularly in light of the "numerous similar injuries to operators' appendages at Diamond facilities caused by this exact same model belling machine." (Doc. 160 at 6).

## II. ANALYSIS

### A. Standard

Federal Rule of Civil Procedure 56 provides that the Court may grant summary

9

judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant bears its burden of showing that there is no genuine issue of fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587. Stated differently, "[i]f the party with the burden of proof cannot produce any summary judgment evidence on an essential element of his claim, summary judgment is required." *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990).

### B. Discussion

#### 1. Plaintiff's Negligence Claims Will Be Dismissed

As a general rule, the LWCA provides the exclusive remedy for employees injured in on-the-job accidents. La. R.S § 23:1032(A)(1)(a); *McCann v. Best Buy Co.*, No. 17-cv-00108, 2018 WL 3244999, at *3 (M.D. La. July 3, 2018) (Jackson, J.). In his opposition, Plaintiff concedes that the LWCA bars his remaining negligence claims. (*See* Doc. 160 at 6 ("Plaintiff readily concedes that Diamond's negligence, or even gross negligence, is irrelevant."). As such, Plaintiff's remaining negligence claims will be dismissed with prejudice.

#### 2. Plaintiff's summary judgment evidence establishes a genuine dispute regarding whether Diamond knew Plaintiff's injury was "substantially certain" to occur

The LWCA's exclusive remedy provision expressly does *not* apply to on-the-job

10

accidents that result from an "intentional act." La. R.S § 23:1032(B). Relevant here, Louisiana law provides that an "intentional act" is established by proof that the employer knew that the plaintiff's injury was "substantially certain" to follow from employer's conduct, whatever the employer's desire may have been as to that injury. *Batiste v. Bayou Steel Corp.*, 2010-1561 (La. 10/1/10), 45 So. 3d 167, 168.[8]

The Louisiana Supreme Court has provided multiple guideposts to determine whether the "substantially certain" element is met. First, and importantly, "[b]elieving that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers' compensation." *Id.* (quotation marks omitted).

> "Substantially certain to follow" requires more than a reasonable probability that an injury will occur and "certain" has been defined to mean "inevitable" or "incapable of failing." An employer's mere knowledge that a machine is dangerous and that its use creates a high probability that someone will eventually be injured is not sufficient to meet the "substantial certainty" requirement. Further, mere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing.

*Id.* at 168–69 (alterations, quotation marks, and citations omitted). Finally, "the mere fact an employer is aware of prior similar accidents is insufficient to establish an intentional act." *Id.* at 169 n.2.

Applying these principles at summary judgment, Louisiana courts have held

---

[8] Alternatively, a plaintiff may establish an "intentional act" by proving that the employer consciously desired the plaintiff's injury, whatever the likelihood of that injury happening from the employer's conduct. *Batiste*, 45 So. 3d at 168. Here, Plaintiff concedes that Diamond did not consciously desire to cause his injury. (Doc. 160 at 6 ("Plaintiff agrees there was not an intentional tort inflicted upon him by Diamond in the sense of a battery.")).

11

that a plaintiff failed to establish a genuine dispute regarding an employer's "substantial certainty" where the plaintiff did not develop *any* evidence of prior, similar, on-the-job accidents. *E.g., Batiste,* 45 So. 3d at 169 ("[W]e find plaintiffs are unable to prove Bayou Steel knew Mr. Batiste's accident was substantially certain to occur. To the contrary, the undisputed evidence produced by Bayou Steel reveals Mr. Baptiste and his co-workers performed the same task in the same manner for more than fourteen years with no prior injuries.").[9] Conversely, Louisiana courts regularly hold that "substantial certainty" is satisfied where "the events leading to the injuries had actually occurred before," *and* the record establishes additional evidence of the employer's disregard for known risks in the events leading up to the plaintiff's accident. *See Romero v. Northrop Grumman Corp.*, 44 F. App'x 654, 2002 WL 1397124 at *5 (5th Cir. 2002) (discussing authorities); *e.g., Clark v. Div. Seven, Inc., 1999-3079* (La. App. 4 Cir. 12/20/00), 776 So. 2d 1262, 1264, *writ denied,* 2001-0183 (La. 3/16/01), 787 So. 2d 318 ("substantial certainty" satisfied where just prior to the plaintiff's fall, employer ordered plaintiff to return to slippery roof despite knowing that plaintiff's co-worker had just slipped and narrowly avoided falling); *Trahan v. Trans–Louisiana Gas Co.*, 1992-811(La. App. 3 Cir. 5/5/93), 618 So.2d 30, 31 ("substantial certainty"

---

[9] *See also, e.g., Hirst v. Thieneman,* 2004-0750 (La. App. 4 Cir. 5/18/05), 905 So. 2d 343, 350 (affirming summary judgment in favor of employer where plaintiff failed to develop any evidence or prior, similar on-the-job accidents); *Bergeron v. Murphy Oil, U.S.A., Inc.,* 2005-0271 (La. App. 4 Cir. 4/28/05), 903 So. 2d 496, 502 (same), *writ denied* (La. 12/16/05), 917 So. 2d 1108; *Perret v. Cytec Indus., Inc.,* 04-745 (La. App. 5 Cir. 11/30/04), 889 So. 2d 1121, 1125 (same), *writ denied* 2004-3004 (La. 2/18/05), 896 So. 2d 34; *accord Reeves v. Structural Pres. Sys.*, 98-1795 (La. 3/12/99), 731 So. 2d 208, 213 (determining that plaintiff failed to prove "substantial certainty" and rendering judgment in favor of employer where the evidence at trial established that "plaintiff, as well as other SPS workers, had moved the pot manually on several occasions and no one had ever been injured.").

satisfied where Plaintiff alleged that employer knew he had become ill on two prior occasions after conducting "unprotected sniff tests" of contaminated natural gas, yet still ordered him to conduct a third unprotected sniff test); *Wainwright v. Moreno's, Inc.*, 1990-1271 (La. App. 3 Cir. 5/20/92), 602 So.2d 734, 739 ("substantial certainty" satisfied where employer ordered employee to work in a ditch that had caved in the previous day and which looked as though it would cave in again).

Here, the salient issue is whether the evidence creates a genuine dispute that Diamond knew that Plaintiff's dismemberment was substantially certain to follow from Diamond's decision to remove manufacturer's rubber safety flaps from its belling machines. Based on the foregoing authorities, the answer is obviously "yes." At the time of his accident, Plaintiff was a temporary employee, with no prior industry experience, assigned to work a "dangerous" machine, which, by Diamond's own admission, lacked manufacturer safety guards. Plaintiff's supervisor warned him that the belling machine "is going to grab your arm if you don't be careful," yet Diamond failed to provide any training whatsoever regarding how to respond if a gasket fell into the belling chamber. Thereafter, Diamond failed to provide any supervision of Plaintiff's work. On the date of the accident, a gasket fell into the belling machine's inner chamber, and Plaintiff's hand was amputated when he attempted to retrieve it by reaching through an unguarded access point. *Five* additional employees had suffered essentially the *same* accident in just the *five* years preceding Plaintiff's injury. Plaintiff's expert opines that none of these accidents would have occurred—including Plaintiff's accident—had the rubber safety guards

13

not been removed by Diamond, yet, Diamond did not replace the missing guards until the day after Plaintiff lost his hand.

In sum, Plaintiff's proof goes well-beyond what may suffice to establish a genuine dispute that Diamond knew his injury was "substantially certain" to follow from Diamond's decision to remove the rubber guards from its belling machines, and is easily enough to defeat Diamond's summary judgment motion. *Clark, supra,* 776 So. 2d at 1264; *Wainwright, supra,* 602 So.2d at 739.[10]

### C. The Court reminds counsel of their ongoing duties of professionalism, candor, and fair-dealing

The Court pauses to emphasize its consternation at Diamond's initial representation that "there were no injuries to Diamond beller operators inserting hands [sic] into the belling chamber of operating beller machines before the subject accident." (Doc. 156-3 at ¶ 12). The foregoing analysis illustrates that, at best, this assertion is inaccurate. At worst, it is a blatant violation of counsel's duty of candor to the Court. Coupled with Diamond's repeated failure to cite evidence in support of its factual assertions at summary judgment, the Court harbors serious concerns

---

[10] Diamond cites (and discusses) a number of cases in support of its argument that Plaintiff cannot prove "substantial certainty." (*See* Doc. 109-3 at 8-13). Yet, none of Defendant's authorities involve proof of even *one* prior similar accident, let alone *five* prior similar accidents within five years preceding the plaintiff's injury. *See Reeves, supra,* 731 So. 2d at 213 ("no one had ever been injured" prior to the plaintiff's injury); *see also Simoneaux v. Excel Grp., LLC,* 2006-1050 (La. 9/1/06), 936 So. 2d 1246, 1248 (no evidence of prior, similar accidents); *Hirst, supra,* 905 So. 2d at 350; *Bergeron, supra,* 903 So. 2d at 502 (same); *Perret, supra,* 889 So. 2d at 1125 (same); *Mouton v. Blue Marlin Specialty Tools, Inc.,* 2001-648 (La. App. 3 Cir. 10/31/01), 799 So. 2d 1215, 1219-20 (same); *Snow v. Gulf States Utilities Co.,* 1985-0391 (La. App. 1 Cir. 5/28/86), 492 So. 2d 31, 39 (same); *accord Jones v. Exide Techs.,* No. 05-cv-1094, 2005 WL 8157562, at *6 (M.D. La. Dec. 20, 2005) (Noland, M.J.) (same). Accordingly, Diamond's authorities are easily distinguishable, and inapposite to the Court's analysis.

regarding counsel's commitment to professionalism, candor, and fair-dealing.

The Court reminds counsel *and* the parties that *everyone* appearing in this District shall comply with the Local Rules—which include by adoption Rule 3.3 of the Rules of Professional Conduct of the Louisiana State Bar Association—and that willful noncompliance is cause for disciplinary action. M.D. La. LR 83(b)(6), (10). The Court will not, at this time, go so far as to impose sanctions. However, counsel is advised that appropriate sanctions may ultimately be imposed for – at the very least – failing to adequately investigate the relevant facts of this case. Nonetheless, the Court cautions Diamond's counsel that the continued failure to comply with this Court's express instructions and rules of conduct may result in penalties.

### III.  CONCLUSION

Accordingly,

**IT IS ORDERED** that Diamond's **Motion For Summary Judgment (Doc. 156)** be and is hereby **GRANTED IN PART**, and that Plaintiff's remaining negligence claims be and are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that in all other respects Diamond's Motion be and is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's **Motion And Incorporated Memorandum To Include Inadvertently Omitted Authority (Doc. 161)** and

Plaintiff's **Opposed Motion To Substitute Document (Doc. 162)** be and are hereby **DENIED AS MOOT**.

Baton Rouge, Louisiana, this 24th day of January, 2022

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**